**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JEFFREY WINN**                                                    **CIVIL ACTION**

**VERSUS**                                                          **NO: 12-1307**

**NEW ORLEANS CITY, ET AL.**                                        **SECTION: "H"(2)**

**ORDER AND REASONS**

Before the Court is a Motion to Dismiss (R. Doc. 5) filed by all Defendants. For the following reasons, the Motion IS GRANTED IN PART and DENIED IN PART. This Court possesses subject matter jurisdiction and therefore may adjudicate the instant dispute. The Motion is granted, however, insofar as Plaintiff's Complaint fails to state a claim upon which relief can be granted. Accordingly, Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

Plaintiff may amend his Complaint within twenty (20) days of the entry of this Order. If Plaintiff fails to file timely an amended complaint, the Court will dismiss his claims against Defendants with prejudice.

1

**BACKGROUND**[1]

Plaintiff brings this civil rights action alleging wrongful termination from the New Orleans Police Department ("NOPD").  The NOPD employed Plaintiff as a Police Captain.

Plaintiff was the ranking officer at the Haban's Elementary School on September 2, 2005, where he and his subordinates—including Lieutenant Dwayne Scheuermann and Officer Greg McRay—were posted in the aftermath of Hurricane Katrina.  On that day, a vehicle containing a dead body was brought to the school.  Plaintiff ordered Lieutenant Schuermann and Officer McRay to move the vehicle to an area behind the levee.  In November 2005, Plaintiff learned that the vehicle, with the body inside, was set ablaze.

In December 2008, a series of news articles was published which alleged that the deceased, Henry Glover, was shot by NOPD officers and that Plaintiff and his subordinates conspired to dispose of the evidence by burning the vehicle.  The NOPD subsequently initiated a criminal investigation regarding the circumstances of Glover's death.  Plaintiff gave a compelled statement in February 2009 in which he denied any knowledge of police misconduct.

In May 2009, criminal investigators attempted to interview Lieutenant Schuermann but he refused to give a statement, invoking his Fifth Amendment right against self-incrimination.  Plaintiff subsequently confronted Lieutenant Schuermann regarding the latter's refusal to cooperate with

---

[1] Unless noted otherwise, the following facts are taken from Plaintiff's Complaint (R. Doc. 1).

the investigation. To Plaintiff's surprise, Lieutenant Schuermann revealed that Officer McRae burned the vehicle with Glover's body inside. Lieutenant Schuermann believed, however, that he had previously informed Plaintiff of Officer McRae's actions.

As the investigation progressed, Plaintiff's criminal defense attorney (whose services Plaintiff had obtained in December 2008) advised Plaintiff that he should his exercise his Fifth Amendment right against self-incrimination in order to avoid "erroneous criminal exposure." Thus, when Plaintiff receive a grand jury subpoena to testify in a different criminal investigation—the so-called "Danziger bridge shootings"—Plaintiff invoked his Fifth Amendment rights even though Plaintiff was informed that he was only a witness and not suspected of any criminal wrongdoing.

In November 2011, Lieutenant Scheuermann and Officer McRae were indicted as a result of their alleged involvement in the Glover incident. The case proceeded to trial and Plaintiff was called as a witness. Plaintiff waived his Fifth Amendment right to remain silent and testified.

After the trial concluded, the NOPD Public Integrity Bureau initiated an administrative investigation into alleged administrative violations committed by Plaintiff. The investigation was headed by Captain John Thomas and included the statements of Captain Tami Brissette and Captain David Curole, as well as the compelled statement of Plaintiff. Plaintiff explained that, in accordance with his Fifth Amendment rights and upon the advice of counsel, he did not disclose his conversation with Lieutenant Schuermann in order to guard against "being mistakenly implicated in the criminal activity." Upon the conclusion of the administrative investigation, Captain Thomas

3

found that Plaintiff's failure to disclose his acquired knowledge regarding the circumstances of the Glover incident violated various NOPD rules.   Assistant Superintendant Arlinda Westbrook reviewed Captain Thomas' finding and concurred.

On or about May 18, 2011, Plaintiff appeared before a three-person panel to determine the disciplinary action, if any, to be recommended.   The panel was composed of Police Commander James Treadaway, Deputy Superintendent Kirk Bouyelas, and Deputy Superintendent Stephanie Landry.   Plaintiff reiterated his reasons for keeping silent.   The Panel recommended discipline up to and including termination.   This recommendation was forwarded to Police Superintendent Ronald Serpas who, on May 25, 2011, terminated Plaintiff's employment with the NOPD.

Plaintiff appealed his termination to the New Orleans Civil Service Commission and a hearing was conducted.   Sworn testimony was taken and evidence was submitted by both sides. While the instant Motion was pending, the Commission sustained Plaintiff's dismissal.  (R. Doc. 22, Ex. A.)

On May 21, 2012, Plaintiff brought a civil rights action under 42 U.S.C. § 1983 against the City of New Orleans, the New Orleans Police Department, and the following individuals (collectively the "non-entity Defendants") in their personal and official capacities: Ronald Serpas, Kirk Bouyelas, James Treadaway, Stephanie Landry, Arlinda Westbrook, and John Thomas.  (R. Doc. 1.)  Plaintiff alleges various violations of the United States and Louisiana constitutions, as well as a civil conspiracy amongst all Defendants in violation of the same.   Defendants filed a Motion to Dismiss

4

for failure to state a claim and lack of subject matter jurisdiction on June 18, 2012 (R. Doc. 5), which Plaintiff opposed on July 10, 2012 (R. Doc. 14).  Plaintiff filed a supplemental memorandum on November 13, 2012.  (R. Doc. 22.)

**LEGAL STANDARD**

I.      Lack of Subject Matter Jurisdiction—Fed. R. Civ. P. 12(b)(1)

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998).  The basic statutory grants of federal court subject-matter jurisdiction are contained in 28 U.S.C. § 1331 and § 1332.

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. Heeremac V.O.F.*, 241 F.3d 420, 424 (5th Cir.2001).  The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion to dismiss and must show that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).

5

II.     Failure to State a Claim Upon Which Relief Can Be Granted—Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009).  The Court need not, however, accept as true legal conclusions couched as factual allegations.  *Iqbal*, 129 S. Ct. at 1949–50.

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.  *Id*.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.  *Iqbal*, 129 S. Ct. at 678 (quoting *Twombly*, 550 S. Ct. at 1955).  Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.  *Lormand*, 565 F.3d at 255–57.  The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

6

**LAW AND ANALYSIS**

Plaintiff asserts various causes of action in his Complaint, to wit: violation of the Fifth and Fourteenth Amendments of the United States Constitution; violation of Article I, Sections 3 and 24 of the Louisiana Constitution; and civil conspiracy.  Defendants move to dismiss the Complaint on multiple grounds.  As a threshold matter, Defendants contend that Plaintiff has failed to exhaust his administrative remedies, thereby depriving this Court of subject matter jurisdiction.  In the alternative, Defendants aver that Plaintiff's Complaint fails to state a claim upon which relief can be granted for the following reasons: (1) Plaintiff fails to state a claim under the United States Constitution and the Louisiana Constitution; (2) Plaintiff fails to state a claim against the City of New Orleans; (3) the NOPD is not an entity capable of being sued; (4) the non-entity Defendants are entitled to qualified immunity.

For the following reasons, the Motion is granted in part and denied in part.  This Court possesses subject matter jurisdiction and therefore may adjudicate the instant dispute.  The Motion is granted, however, insofar as Plaintiff's Complaint fails to state a claim upon which relief can be granted.

I.      Whether This Court Possesses Subject Matter Jurisdiction

In accordance with Fifth Circuit precedent, the Court first addresses subject matter jurisdiction. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d

281, 286 (5th Cir. 2012) ("The court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits") (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).  Defendants' jurisdictional attack fails for two reasons.  First, Plaintiff has exhausted his administrative remedies as the New Orleans Civil Service Commission has ruled on his appeal. Second, and more importantly, even if Plaintiff had additional administrative remedies available, exhaustion is not required in this case.

As a general rule, "plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court."  *Porter v. Nussle*, 534 U.S. 516, 523 (2002) (citing *Patsy v. Bd. of Regents of State of Florida*, 457 U.S. 496, 516 (1982)).  Where Congress explicitly provides that administrative remedies must be exhausted or where such intent may be inferred from the statutory scheme, however, exhaustion is required.  *F.D.I.C. v. Scott*, 125 F.3d 254, 257 (5th Cir. 1997); *see also Patsy*, 457 U.S. at 501–02.

Defendants have not provided this Court with, nor has this Court found, any positive law that explicitly or implicitly requires that Plaintiff exhaust administrative remedies before bringing his § 1983 claim.  *See Benoit v. Bd. of Comm'rs of New Orleans Levee Dist.*, 459 F. Supp. 2d 513, 519 n.2 (E.D. La. 2006) ("[T]here is no authority to support a contention that [a plaintiff] must exhaust state remedies before the Civil Service Commission before bringing [a] § 1983 claim in federal court.")  Accordingly, Defendants' challenge to this Court's subject matter jurisdiction is easily defeated.

II.    <u>Whether Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted</u>

For the following reasons, the Court finds that Plaintiff's Complaint fails to state a claim upon which relief can be granted.  Accordingly, Plaintiff's claims are dismissed.

A. *Whether the NOPD is a Suable Entity*

Defendants argue that the NOPD is not a suable entity and therefore must be dismissed from the instant litigation.  Plaintiff does not address this argument in his opposition.  For the following reasons, the Court agrees with Defendant and dismisses all claims against the NOPD.

Rule 17(b) provides that the capacity to be sue or be sued is determined "by the law of the state where the Court is located."  Fed. R. Civ. P. 17(b).  Louisiana law therefore determines the suability of the NOPD.  In order to possess juridical capacity under Louisiana law, an entity must qualify as a "juridical person."  *Dugas v. City of Breaux Bridge Police Dep't*, 757 So. 2d 741, 743 (La. 2000).  Article 24 of the Louisiana Civil Code provides in pertinent part that "[a] juridical person is an entity to which the law attributes personality."  La. Civ. Code art. 24.  The parties have cited and this Court has found no law that confers upon the NOPD the authority to sue or be sued.  In fact, courts in this District have consistently found that the NOPD lacks juridical capacity.  *See, e.g.*, *Everson v. N.O.P.D. Officers*, No. 07–7027, 2009 WL 122759, at *2 (E.D. La. Jan. 15, 2009); *Atkinson v. NOPD*, No. 06–5820, 2007 WL 2137793, at *1 (E.D. La. July 23, 2007); *Banks v. United States*, No. 05–6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007); *Manley v. State of Louisiana*, No. 00–1939, 2001 WL 506175, at *2 (E.D. La. May 11, 2011).

9

B. *Whether Plaintiff States a Claim Under the Louisiana Constitution*

Defendants contend that Plaintiff's Complaint fails to state a claim for violation of his rights under Article I, Sections 3 and 24 of the Louisiana Constitution.  Plaintiff does not address this argument in his opposition.  For the following reasons, the Court agrees with Defendant and dismisses Plaintiff's state constitutional law claims.

Article I, Section 3 of the Louisiana Constitution provides that "that no person shall be denied the equal protection of the laws."[2] *State v. Expunged Record (NO.) 249,044*, 881 So. 2d 104, 108–09 (La. 2004).  In general, "'the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated.'" *State v. Fleury*, 799 So. 2d 468, 472 (La. 2001) (quoting *State v. Petrovich*, 396 So. 2d 1318, 1322 (La. 1981)).  Accordingly, when evaluating an equal protection claim, a court's task is to determine whether an individual law "abridges an individual's right to equality, and to determine [the law's] constitutionality."  *Expunged Record (NO.) 249,044*, 881 So. 2d at 109.  As Plaintiff does not challenge the constitutionality of *any* state law, his Complaint necessarily fails to state an equal protection claim.

---

[2] Article I, Section 3 reads as follows:

> No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the later case as punishment for crime.

Article I, Section 24 of the Louisiana Constitution provides in pertinent part that "[t]he enumeration in this constitution of certain rights shall not deny or disparage other rights retained by the individual citizens of the state." La. Const., art. I, § 24. Plaintiff cities no authority, nor has the Court found any, that would entitle him to relief under this section. *See Pellerin–Mayfield v. Goodwill Indus.*, No. 02–3774, 2003 WL 22174279, at *4 (E.D. La. Feb. 12, 2003) (dismissing a §1983 claim under Article I, Section 24 for similar reasons).

C. *Whether Plaintiff States a Claim Under the United States Constitution*

Plaintiff's claims under the Fifth and Fourteenth Amendments of the United States Constitution are not cognizable as a matter of law. Therefore, such claims are dismissed.

i. *Fifth Amendment—Privilege Against Self-Incrimination*

Plaintiff avers in his Complaint that his Fifth Amendment rights were violated when he was fired for exercising his right against self-incrimination by failing to disclose information pertaining to the Glover incident. Defendants argue, however, that in order to state a claim for relief under the Fifth Amendment, Plaintiff must prove that Defendants compelled him to testify against himself in a criminal or administrative proceeding. As Plaintiff's Complaint contains no such allegations, Defendants aver that Plaintiff's Fifth Amendment claim must be dismissed.

Plaintiff devotes the bulk of his opposition memorandum to rebutting this argument. Specifically, Plaintiff argues that *Chavez v. Martinez*, 538 U.S. 760 (2002)—a case on which Defendants rely heavily— is distinguishable from the instant case. In Plaintiff's own words:

> *Chavez* merely involved a situation where a police officer took a coerced confession from a Defendant in a matter that never was prosecuted as a crime committed by the Defendant. In this case, Mr. Winn had a real and appreciable belief that he would be charged with a crime if he spoke to the NOPD. The NOPD and the other Defendants nevertheless threatened him with and ultimately imposed severe adverse consequences in the wake of this assertion of his Fifth Amendment rights.

(R. Doc. 14.) Plaintiff concludes that any similarity between the instant case and *Chavez* are "purely illusory." (*Id.*)

Instead, Plaintiff insists that the Ninth Circuit's decision in *United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005), controls the outcome in this case. Specifically, Plaintiff argues that *Antelope* provides that "the right against self-incrimination attaches when an appreciable threat of incrimination exists, and a violation of that right occurs when coercion exists to waive it." (R. Doc. 14.) Consequently, Plaintiff contends that he need not be forced to incriminate himself in a criminal proceeding in order to state a claim for a violation of his Fifth Amendment rights.

Plaintiff's arguments fail for two reasons. First, and most importantly, *Chavez* is indeed controlling in this case and holds that the Fifth Amendment is not violated unless a defendant is forced to be a witness against himself in a criminal case. As Plaintiff has not been forced to incriminate himself in a criminal proceeding, his Fifth Amendment claim fails. Second, *Antelope* is not binding on this Court and furthermore is easily distinguishable from the case at bar.

a. Chavez v. Martinez

12

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V. In *Chavez v. Martinez*, the United States Supreme Court addressed whether this right is violated where the challenged statements are never admitted as testimony against the compelled individual in a criminal case.  The plaintiff in *Chavez* was arrested after an altercation with police during which he was shot several times.  538 U.S. at 764.  The plaintiff was then taken to the hospital, where he was questioned by a police officer while receiving treatment.  *Id.*  Although the plaintiff was neither charged with a crime nor were his answers to the officer's questions used against him in a criminal prosecution, the plaintiff brought suit under 42 U.S.C. § 1983 alleging, *inter alia*, violation of the Self-Incrimination Clause of the Fifth Amendment.  *Id.* at 764–65.

The Court held that a violation of the Fifth Amendment "occurs only if one has been compelled to be a witnesses against himself in a criminal case."  *Id.* at 770.  Drawing on previous case law, the court recognized that the self-incrimination privilege may be asserted in noncriminal cases and that "it is necessary to allow assertion of the privilege *prior* to the commencement of a 'criminal case' to safeguard the core Fifth Amendment trial right."  *Id.* at 772 (emphasis added). The Court cautioned, however, that "[r]ules designed to safeguard a constitutional right . . . do not extend the scope of the constitutional right itself."  *Id.*  Accordingly, since the plaintiff in *Chavez* "was never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case," his Fifth Amendment claim failed.  *Id.* at 766–67.

13

*Chavez* thus establishes that the criminal prosecution of a § 1983 plaintiff is the *sine qua non* for stating a claim under the Fifth Amendment.  Indeed, the Fifth Circuit recognizes that "[t]he Fifth Amendment privilege against self-incrimination is a fundamental trial right which can be violated only *at* trial, even though pre-trial conduct by law enforcement officials may ultimately impair that right."  *Murray v. Earle*, 405 F.3d 278, 285 (5th Cir. 2005) (emphasis in original) (footnotes omitted).  It therefore follows that "§1983 plaintiffs do not have a Fifth Amendment claim against law-enforcement officials" if the unlawfully obtained testimony is "not then introduced against the plaintiffs in criminal proceedings."  *Murray*, 405 F.3d at 285 n.11.  *See also Mayle v. Felix*, 545 U.S. 644, 661 (2004) (finding that the defendant's "Fifth Amendment right did not ripen until his statements were admitted against him at trial.") (citing *Chavez*, 538 U.S. at 766–67).

Here, as in *Chavez*, Plaintiff's § 1983 claim for violation of his Fifth Amendment rights fails due "to the absence of a 'criminal case' in which [Plaintiff] . . . was compelled to be a 'witness' against himself."  *See Chavez* at 772–73.  Accordingly, Plaintiff's Fifth Amendment claim is dismissed.

### b. United States v. Antelope

Plaintiff's reliance on *Antelope* is misplaced for two reasons.  First, *Antelope* was decided in another circuit and therefore does not bind  courts in the Fifth Circuit.  *See Milofsky v. American Airlines, Inc.*, 404 F.3d 338, 346 (5th Cir. 2005).

14

Second, *Antelope* was premised on a set of facts different from those presented here and in *Chavez*.   In *Antelope*, a criminal defendant challenged a condition of supervised release that required mandatory polygraph testing on the grounds that such testing violated his Fifth Amendment right against self-incrimination.   395 F.3d at 1130–31.   The Ninth Circuit agreed with the defendant and reversed the district court's decision to revoke his supervised release.   *Id.* at 1134–39.

The government argued that *Chavez* stands for the proposition that a Fifth Amendment claim is not ripe until the moment a compelled statement is used against a defendant in a criminal proceeding.   *Id.* at 1140.   The *Antelope* Court disagreed and distinguished between using an alleged Fifth Amendment violation as "a sword in a civil suit" and invoking one's Fifth Amendment rights "as a shield against criminal prosecution."   *Id.* at 1140–41.   As *Chavez* involved the latter situation, its holding "is tightly bound to its § 1983 context."   *Id.* at 1141.   The court noted that "[w]ere [the defendant] . . . to turn the tables and sue the government, *Chavez* would direct our inquiry . . . and, in such a posture, the government's argument might well prevail."   *Id.*

The facts of the instant case more closely resemble those in *Chavez* than *Antelope*, as Plaintiff invokes his Fifth Amendment rights as a sword in a § 1983 action rather than as a shield in a criminal prosecution.   Accordingly, *Antelope* is inapposite.

ii. *Fourteenth Amendment—Procedural Due Process*

Plaintiff alleges that the NOPD violated his Fourteenth Amendment rights by terminating

15

his employment without sufficient due process.  Section one of the Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . . deprive any person of life, liberty, or *property*, without due process of law."  U.S. Const. amend. XIV, § 1 (emphasis added).  This Court examines "procedural due process claims in two steps:  the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).

a. *Whether Plaintiff has a Property Interest in his Employment*

Plaintiff avers that he has a recognized property interest in his job as a municipal police officer.  In moving to dismiss Plaintiff's procedural due process claim, Defendants do not address this issue.  For the following reasons, the Court finds that Plaintiff has an established property interest in his employment.

A legally cognizable property interest is not incidental to public employment; rather, it must be created by an independent source, such as state law.  *See Muncy v. City of Dallas, Texas*, 335 F.3d 394, 398 (5th Cir. 2003); *Wallace v. Shreve Mem'l Library*, 79 F.3d 427, 429 (5th Cir. 1996). Under Louisiana law, "a permanent classified civil service employee has a protected interest in her job."  *Wallace*, 79 F.3d at 431.  The Louisiana Supreme Court has consistently held that municipal policemen employed by the city of New Orleans are included in the classified city civil service.  *See Saacks v. City of New Orleans*, 687 So. 2d 432, 439–40 (La. 1996) (citing La. Const. art. X, § 1(B), 2);

16

*Walters v. Dep't of Police of City of New Orleans*, 454 So. 2d 106 (La. 1984)).  As Plaintiff was employed by the NOPD and had achieved permanent status, the Court finds that Plaintiff has a cognizable property interest in his employment.

b. *Whether Plaintiff Was Terminated Without Sufficient Process*

For the following reasons, the Court finds that Plaintiff was afforded sufficient process. Accordingly, Plaintiff's procedural due process claim is dismissed.

Defendants contend that it is unclear from Plaintiff's Complaint how each of the named Defendants violated his due process rights or in what particular way those rights were violated. Defendants note that Plaintiff availed himself of an opportunity to appeal his termination to the Civil Service Commission.

Plaintiff's response is rather difficult to decipher, as he addresses this argument in a piecemeal fashion throughout his opposition memorandum.  As this Court reads Plaintiff's opposition, it appears to make two separate arguments.  First, Plaintiff avers that Defendants unlawfully punished him for invoking his Fifth Amendment rights by terminating his employment with the NOPD.  This argument is easily defeated, however, as Plaintiff does not a state a claim for relief under the Fifth Amendment.  Second, Plaintiff contends that  Defendants conspired to withhold evidence at the hearing before the Civil Service Commission.  Specifically, Plaintiff alleges that Deputy Superintendent Westbrook's testimony on October 13, 2011 that plaintiff was never the subject of a criminal investigation is inconsistent with a March 1, 2011 administrative

17

investigative report—signed and approved by Ms. Westbrook—which states that Plaintiff "at one time, was a *target* of the investigation into the death of Mr. Glover, and was to be called to testify in the widely publicized trial." (R. Doc. 1 ¶¶ 31–32) (emphasis in original). This statement, according to Plaintiff, proves "that Defendants <u>knew</u> [Plaintiff] properly invoked his Fifth Amendment rights and nevertheless discharged him for doing so." (R. Doc. 14) (emphasis in original).

Generally, public employees with cognizable property interests in continued employment are entitled to a pre-termination hearing. *See Helton v. Clements*, 832 F.3d 332, 337 (5th Cir. 1987); *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988); *Irby v. Sullivan*, 737 F.2d 1418, 1421 (5th Cir. 1984). Where, as here, "a governmental employer provides a full post-termination hearing, pretermination due process is limited." *Browning v. City of Odessa, Texas*, 990 F.2d 842, 844 (5th Cir. 1993) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). "A satisfactory pretermination 'hearing' need not be elaborate, for such a hearing is merely designed to prevent the employer from making a mistake." *Browning*, 990 F.2d at 844 (citing *Loudermill*, 470 U.S. at 545). In essence, the hearing "should be an initial inquiry whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Helton*, F.2d at 337 (citing *Loudermill*, 470 U.S. at 544–46). The essential requirements of a pre-deprivation hearing are "notice and an opportunity to respond." *Loudermill*, 470 U.S. at 546.

The Court finds that the pre-termination process afforded Plaintiff was more than sufficient

18

to allay any procedural due process concerns.  Specifically, Plaintiff was afforded multiple levels of review before his employment with the NOPD was terminated.  The administrative investigation against Plaintiff was initiated by Captain Thomas and included the statements of Captain Brissette and Captain Curole.  By his own admission, Plaintiff availed himself of the opportunity to present his side of the story. (R. Doc. 1 ¶25.) Assistant Superintendent Westbrook subsequently reviewed and approved Captain Thomas' finding that Plaintiff violated NOPD internal protocol.  (*Id.* at ¶27.) Plaintiff was afforded a second opportunity to present his case on May 18, 2011—this time in front of a three-member panel of NOPD supervisors comprised of Police Commander Treadaway, Deputy Superintendent Bouyelas, and Deputy Superintendent Landry.  (*Id.* at ¶28.) After consideration of the matter, the panel recommended termination of Plaintiff's employment.  Police Superintendent Serpas reviewed and agreed with this recommendation and Plaintiff's employment with the NOPD was terminated.  (*Id.* at ¶29.)

Even if this Court was to find that the pre-termination process afforded Plaintiff was constitutionally deficient, such deficiency was cured by subsequent post-termination proceedings. *See Comp. Under the Longshore and Harbor Workers' Comp. Act v. Louisiana Ins. Guar. Ass'n*, 889 F.2d 626, 631 (5th Cir. 1989) (finding that a "'meaningful opportunity subsequent to the initial taking'" of property can cure any deficiency stemming from inadequate pre-termination process) (quoting *Parrat v. Taylor*, 451 U.S. 527, 541 (1981)); *Thompson v. Bass*, 616 F.3d 1259, 1266 (5th Cir. 1980) (finding that "although the pretermination procedures afforded a dismissed public

19

employee with a property interest in his job were constitutionally inadequate, the error was cured by subsequent posttermination proceedings that included written notice of the charges and a public hearing."); *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir. 1980) (finding that "any error involved [in the pre-termination hearing] was cured in the subsequent public hearing.") Here, Plaintiff received post-termination process when he appealed Chief Serpas' decision to the New Orleans Civil Service Commission.  A hearing was conduced, sworn testimony was taken, and evidence was submitted by both sides.  (*Id.* at ¶30.)  While the instant Motion was pending, the Commission sustained Plaintiff's dismissal.  (R. Doc. 22, Ex. A.)

Plaintiff appears to attack the sufficiency of both his pre-termination and post-termination hearings by alleging that Superintendent Westbrook perjured herself when she testified before the Commission that she was never informed that Plaintiff was a target in the criminal investigation surrounding the death of Henry Glover.  (*See* R. Docs. 1 ¶¶31–32; 14.)  From this fact, Plaintiff concludes that *all* Defendants conspired to fabricate testimony in order to discharge Plaintiff, because they knew he "properly invoked his Fifth Amendment rights."  (R. Doc. 14.)

This argument fails for two reasons.  First, Plaintiff's bald assertion that all defendants conspired to fabricate testimony is simply not supported by the allegations in his Complaint.  *See Lynch v. Cannatella*, 810 F.3d 1363, 1370–71 (5th Cir. 1987) ("Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.") Second, Superintendent Westbrook's testimony regarding whether Defendants knew that Plaintiff

20

"properly" invoked his Fifth Amendment rights is irrelevant—as explained *supra*, a § 1983 Plaintiff's Fifth Amendment claim does not ripen unless and until his testimony is used against him in a criminal trial. Thus, Plaintiff's attempt to bootstrap his procedural due process claim to his Fifth Amendment claim necessarily fails.

D. *Derivative Claims—Liability of the City of NOLA and Civil Conspiracy*

Plaintiff's failure to state a claim for violation of his constitutional rights dooms his *Monell* claim against the city of New Orleans as well as his § 1983 conspiracy claim. "To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Similarly, in order state a claim for conspiracy "under § 1983, 'it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient.'" *Estate of Farrar v. Cain*, 941 F.2d 1311, 1313 (5th Cir. 1991) (quoting *Farrar v. Cain*, 756 F.2d 1148, 1151 (5th Cir. 1985)). Plaintiff's failure to establish the *conditio sine qua non* for such claims—namely, an underlying constitutional violation—warrants dismissal.

**CONCLUSION**

For the reasons previously stated, the Motion to Dismiss is granted in part and denied in part. Plaintiff may amend his Complaint within twenty (20) days of the entry of this Order.

21

New Orleans, Louisiana, on this 24th day of January, 2013.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**