UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JEFFREY WINN                                           CIVIL ACTION


VERSUS                                                 NO: 12-1307


NEW ORLEANS CITY, ET AL.                               SECTION: "H"(2)


## ORDER AND REASONS

Before the Court is a Motion to Dismiss (R. Doc. 32) filed by all Defendants.  For the following reasons, the Motion is GRANTED IN PART.  All federal claims against Ronald Serpas ("Serpas") in his official capacity are DISMISSED as duplicative of claims against the City of New Orleans (the "City").  Plaintiff's claims against the City for violation of his Fifth Amendment right against self-incrimination and Fourteenth Amendment right to procedural due process are DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.  The only claims remaining for trial are Plaintiff's First Amendment claim against the City and Louisiana state law claims against Serpas.

## BACKGROUND

This is a civil rights action in which the Plaintiff, Jeffrey Winn, alleges wrongful termination from the New Orleans Police Department ("NOPD").  The facts of this matter are summarized in a previous Order and Reasons, wherein the Court dismissed Plaintiff's complaint for failure to state a claim upon which relief can be granted.  *See generally Winn v. New Orleans City*, 919 F. Supp. 2d 743 (E.D. La. 2013).  Plaintiff subsequently filed an amended complaint.  The factual allegations are substantially similar to the original complaint.  The amended complaint differs from the original, however, in two material respects: (1) Plaintiff only named two Defendants: the City and Serpas; and (2) Plaintiff has added a claim under the First Amendment and omitted certain claims under Louisiana state law.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009).  The Court need not, however, accept as true

2

legal conclusions couched as factual allegations.  *Iqbal*, 129 S. Ct. at 1949–50.

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.  *Id*.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.  *Iqbal*, 129 S. Ct. at 678 (quoting *Twombly*, 550 S. Ct. at 1955).  Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.  *Lormand*, 565 F.3d at 255–57.  The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## LAW AND ANALYSIS

Plaintiff has asserted claims against Serpas (in his official capacity) and the City for violation of Plaintiff's First, Fifth, and Fourteenth Amendment rights.[1]  Plaintiff has also asserted claims against Serpas under state law for violations of the Louisiana Constitution.  The Court addresses the causes of action against each defendant separately.

---

[1] Given the rather prolix nature of Plaintiff's amended complaint, it is difficult to ascertain exactly which claims Plaintiff maintains against which Defendants.

I.    Claims Against Serpas

Whether Plaintiff may maintain a certain cause of action against Serpas depends on whether those causes of action arise under federal or state law.  Plaintiff asserts both federal and state law claims.  The Court bifurcates its analysis accordingly.

A.  *Federal Claims Under Section 1983*

Plaintiff asserts his federal claims under 42 U.S.C. § 1983.  Section 1983 provides a private right of action to redress violations of federal law by those acting under color of state law.  *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  Claims under Section 1983 may be brought against individuals in their personal or official capacity.  *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).  Personal-capacity suits seek to impose individual liability on government officials.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Official-capacity suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).  In other words, provided that the governmental entity receives notice and an opportunity to respond, an official-capacity suit "is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Thus, the only immunities available to a defendant sued in his official capacity are those that may be asserted by the governmental entity, *qua* entity.  *Id.*  Personal affirmative defenses such as absolute or qualified immunity are therefore inapplicable in official-capacity suits.  *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000); *see also Graham*, 473 U.S. at

4

159.

Given the foregoing, Plaintiff's Section 1983 claims against Serpas in his official capacity must be treated as claims against the City.  *See Bean v. Hunt*, No. 11–3157, 2013 WL 5890573, at *4 (E.D. La. Nov. 1, 2013).  Because Plaintiff's official-capacity claims are redundant and without independent legal significance, *see Holland v. City of Houston*, 41 F. Supp. 2d 678, 689 (S.D. Tex. 1999), they are dismissed.[2]  *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (affirming dismissal of official-capacity claims as duplicative); *Shanks v. Parish of Jefferson, La.*, No. 04–1057, 2004 WL 1737904, at *1 (E.D. La. July 30, 2004) (dismissing official-capacity claims against parish employee as duplicative of claims against parish itself).

    B.  *State Law Claims Under the Louisiana Constitution*

Defendants purport to move for dismissal of Plaintiff's first amended complaint in its entirety, yet fail to address the viability of Plaintiff's state law causes of action.  The Court will not raise this issue *sua sponte*.  Accordingly, Plaintiff's state law claims against Serpas shall remain pending.

II.    <u>Claims against the City</u>

It is well-established that a civil rights plaintiff may assert claims against a municipal entity. Of course, the *sine qua non* for municipal liability—or the liability of any defendant under Section

---

[2] To the extent Plaintiff asserts claims against Serpas in his official capacity that he does not purport to assert against the City, the Court will treat such claims as if brought against the City, for the reasons previously stated.

5

1983—is an underlying constitutional violation. *See Doe ex rel. Magee v. Covington Sch. Dist.*, 675 F.3d 849, 866–67 (5th Cir. 2012) (en banc). Thus, the Court first examines whether Plaintiff states a valid claim for the violation of his federal rights.

    A. *Plaintiff's Federal Claims Under Section 1983*

Plaintiff alleges the City violated his rights under the First, Fifth, and Fourteenth Amendments. The Court addresses each claim in turn. For the following reasons, the Court finds Plaintiff only states a valid claim under the First Amendment.

    i. *First Amendment Claim*

According to his complaint, Plaintiff testified for the defense in the trial of fellow police officers accused of murdering Henry Glover and burning his body. Plaintiff alleges the City terminated his employment in retaliation for his compelled testimony. These allegations suffice to state a claim for retaliatory discharge.

A government employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983). A *prima facie* case of retaliatory discharge requires the plaintiff to prove five elements: (1) that he suffered an adverse employment decision; (2) that he spoke as a private citizen, *i.e.*, not as a government employee pursuant to official duty; (3) that the speech involved a matter of public concern; (4) that his interest in speaking outweighed the government's interest in the efficient provision of public services; and (5) that the speech precipitated the adverse

employment decision.  *See Gibson v. Kilpatrick*, 734 F.3d 395, 400 (5th Cir. 2013).[3]  The Court

addresses each element in turn.

### a. *Whether Plaintiff Suffered an Adverse Employment Decision*

"Adverse employment decisions include discharges, demotions, refusals to hire, refusals

to promote, and reprimands."  *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011) (internal

quotation marks omitted).  Because Plaintiff alleges the City terminated his employment, the first

element of a *prima facie* case is satisfied.

### b. *Whether Plaintiff Spoke as a Citizen or Government Employee*

The Supreme Court's opinion in *Garcetti v. Caballos*, 547 U.S. 410 (2006), provides the

starting point for analysis under the second prong.  The plaintiff in *Garcetti* worked as a calendar

deputy for the district attorney's office.  *Id.* at 413.  During the course of his employment, the

plaintiff reviewed a certain affidavit in support of a search warrant and concluded it contained

---

[3] The *Gibson* Court explained that a public employee who alleges retaliatory discharge in violation of the First Amendment must only prove *four* elements, namely, that "(1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct."  *See Gibson*, 734 F.3d at 400.  The court further explained that the Supreme Court's recent decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), added a "threshold layer" to the second prong, which requires courts to consider whether the plaintiff spoke as a private citizen or instead as a government employee pursuant to official duty.  *Id.*  Realizing that a four-prong test in which the second prong bifurcates into separate inquiries is unnecessarily complicated, the court conceded that "[f]unctionally, this threshold layer has transformed our test, inserting *an additional prong* at which we consider whether the speech was pursuant to the employee's duties or as a citizen."  *Id.* (citations omitted).  Accordingly, and for purposes of clarity, this Court analyzes a First Amendment retaliation claim in five parts.

"serious misrepresentations."  *Id.* at 414.  The plaintiff voiced his concerns in a "disposition memorandum" circulated to his supervisors, in which he recommended dismissal of the case.  *Id.* Despite again expressing his reservations with the affidavit—this time during an in-person meeting with his supervisors and the warrant affiant—the prosecution continued.  *Id.*  The plaintiff eventually gave testimony favorable to the defense in a hearing before the trial court. *See id.* at 414–15.  The plaintiff alleged he was subjected to a series of retaliatory employment actions following these events.  *Id.* at 415.  He filed suit under Section 1983 for violation of his First and Fourteenth Amendment rights.  *Id.*  The Court confined its analysis to whether the disposition memorandum constituted protected speech. *See id.* at 424–25.

The opinion distinguished between employee speech and citizen speech: "the First Amendment protects a public employee's right, in certain circumstances, to speak *as a citizen* addressing matters of public concern."  *Id.* at 417 (emphasis added).  In determining whether an individual speaks as a citizen or instead as a government employee, neither the fact that the individual expresses his views inside the office nor that the subject matter of the individual's speech relates to his job is dispositive.  *Id.* at 421–22.  The Court also cautioned not to place determinative weight on an individual's formal job description.  *Id.* at 424.

The "controlling factor" in the case before it, the Court explained, was that the plaintiff's disposition memorandum "was written pursuant to [his] official duties." *Id.* at 421.  In other words, because advising a supervisor about how best to proceed with a pending case is "one of the tasks

8

he was paid to perform, [the plaintiff] acted as a government employee." *Id.* at 421–22.  The Court ultimately held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Id.* at 421.

*Garcetti* explicitly declined to provide a "comprehensive framework" for determining when a public employee speaks "pursuant to [his or her] official duties."  *Id.* at 424; *see also Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007) (per curiam).  This task was relegated to the lower courts.  *Gibson*, 734 F.3d at 401.

The Fifth Circuit has answered the bell in various factual scenarios.  *See, e.g.*, *Williams*, 480 F.3d at 693–94 (finding that athletic director's memoranda to school principal alleging misuse of athletic funds constituted citizen speech); *Nixon v. City of Hous.*, 511 F.3d 494, 498–99 (5th Cir. 2007) (finding that uniformed police officer's statements to media at site of accident did not constitute citizen speech); *Charles v. Grief*, 522 F.3d 508, 512–14 (5th Cir. 2008) (finding that systems analyst's emails to Texas Legislature alleging various misconduct by his employer constituted citizen speech); *Davis v. McKinney*, 518 F.3d 304, 316 (5th Cir. 2008) (finding that information systems auditor's (1) complaint to FBI regarding discovery of child pornography on workplace computers and (2) separate complaint to EEOC alleging workplace discrimination constituted citizenship speech); *Haverda v. Hays Cnty.*, 723 F.3d 586, 597–98 (5th Cir. 2013) (finding that police officer's published editorial supporting a sheriff's election campaign constituted citizen

speech); *Gibson*, 734 F.3d 395 (finding that police chief's reports to external agencies that mayor misused city gasoline card did not constitute citizen speech).   But the Fifth Circuit has not addressed the issue before this Court: whether, post-*Garcetti*, a public employee's compelled testimony not required by his job but nonetheless related to his job duties is protected speech.[4] Only two appellate courts—the Third Circuit and the Seventh Circuit—have issued precedential decisions on point.[5]   Both concluded that a public employee speaks as a citizen when he offers sworn testimony in a judicial proceeding, even if that testimony is job-related.

The Court first discusses the Third Circuit's opinion in *Reilly v. City of Atlantic City*, 532 F.3d 216 (3d Cir. 2008).   The plaintiff worked as a police officer for the Atlantic City Police Department. *Id.* at 219.   During the course of his employment, the plaintiff assisted a highly-publicized investigation of corruption in the police department.   *Id.* at 220.   The plaintiff eventually testified for the prosecution in a criminal case brought against a fellow officer.   *Id.*   As a result of his participation in the investigation, and in particular his testimony at trial, the plaintiff alleged he was

---

[4] Whether a public employee speaks as a citizen or instead pursuant to his or her official duties is a question of law.  *See Gibson*, 734 F.3d at 400.

[5] In two unpublished opinions, the Eleventh Circuit has held (with little analysis) that a public employee's testimony relating to his job is not protected speech under *Garcetti*.  *See generally Green v. Barrett*, 226 F. App'x 883 (11th Cir. 2007); *Lane v. Cent. Ala. Cmty. Coll.*, 523 F. App'x 709 (11th Cir. 2013). Moreover, the Ninth Circuit previously held that a police officer's testimony before a grand jury investigating corruption in the police department was made pursuant to his official duties under *Garcetti*.  *Huppert v. City of Pittsburg*, 574 F.3d 696, 707–10 (9th Cir. 2009).   The Ninth Circuit recently overruled this decision.  *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1070–71 (9th Cir. 2013) (en banc).

subjected to adverse employment actions.  *Id.* at 219.

The issue before the court on appeal was whether "truthful trial testimony arising out of [an] employee's official responsibilities constitutes protected speech" post-*Garcetti*.  *Id.* at 230.  The court noted that *Garcetti* focused only on the speech contained in the *Garcetti* plaintiff's disposition memorandum.  *Id.* at 231.  "Because *Garcetti* offer no express instruction on the application of the First Amendment to the trial testimony of a public employee," the court turned to a "settled principle[]" of pre-*Garcetti* jurisprudence: "[t]he duty to testify has long been recognized as a basic obligation that *every citizen* owes his Government."  *Id.* (alterations and emphasis in original) (quoting *United States v. Calandra*, 414 U.S. 338, 345 (1974)).  Thus, because the duty to testify truthfully "is the responsibility of every citizen . . . the First Amendment protection associated with fulfilling that duty of citizenship is not vitiated by one's status as a public employee." *Reilly*, 532 F.3d at 231.  That a public employee's professional duties provide the initial impetus to appear in court does not affect "his/her independent obligation as a citizen to testify truthfully."  *Id.*  Accordingly, the court held that "[w]hen a government employee testifies truthfully, s/he is not 'simply performing his or her job duties[]'; rather, the employee is acting as a citizen." *Id.* (internal citation omitted) (quoting *Garcetti*, 547 U.S. at 423).

The Seventh Circuit recently addressed a similar issue in *Chrzanowski v. Bianchi*, 725 F.3d 734 (7th Cir. 2013).  The plaintiff worked as an assistant state's attorney.  *Id.* at 736.  In connection with an investigation of the plaintiff's boss for improperly handling cases involving relatives and

11

political allies, the plaintiff was subpoenaed to testify before a grand jury. *Id.*  The plaintiff gave sworn testimony regarding his boss's alleged misconduct and later testified at trial for the prosecution under the command of a subpoena. *Id.* at 736–37.  The state's attorney's office terminated the plaintiff's employment approximately four months later. *Id.* at 737.  The plaintiff subsequently filed suit, alleging, *inter alia*, retaliatory discharge in violation of the First Amendment. *Id.*  The defendants responded with a motion to dismiss, which the district court granted. *Id.*  The Seventh Circuit reversed. *Id.* at 743.

The court framed the relevant inquiry under *Garcetti* thusly: "whether the public employee spoke 'because that is part of what [he] was employed to do.'" *Id.* at 740 (quoting *Garcetti*, 547 U.S. at 740).  As an assistant state's attorney, the court speculated that the plaintiff engaged in a "wide range of expressive activity" such as trying cases, filing intra-office reports, speaking to reporters, and testifying before a grand jury as an investigative witness. *Id.* at 740.  But performing any of these tasks "is a far cry from giving eyewitness testimony under subpoena regarding potential criminal wrongdoing that [the plaintiff] happened to observe while on the job." *Id.*  In other words, "providing eyewitness testimony regarding potential wrongdoing, civil or criminal, was never 'part of what [the plaintiff] was employed to do.'" *Id.* at 743.  The court also echoed the Third Circuit's opinion in *Reilly*, reasoning that "[w]hen a public employee gives testimony pursuant to a subpoena, fulfilling the 'general obligation of [every] citizen to appear before a grand jury or at trial,' he speaks 'as a citizen' for First Amendment purposes." *Id.* at 741 (internal citation omitted)

12

(quoting *Branzburg v. Hayes*, 408 U.S. 665, 686 (1972)).

*Reilly* and *Chrzanowski* provide two convincing justifications for holding that a public employee's compelled testimony is protected speech under the First Amendment.[6] First, a public employee is generally not employed for the purpose of providing compelled testimony in the criminal trial of a co-worker.  Second, a public employee's official duties are independent of his or her obligation to provide truthful testimony in a judicial proceeding, even if that testimony is job-related.

The reasoning in *Reilly* and *Chrzanowski* applies with equal force to the case *sub judice*. According to his complaint, the City employed Plaintiff as "Commander of the NOPD's Special Operations Divisions Tactical Unit."  In this capacity, Plaintiff was responsible for the "search and rescue and security of the City . . . before, during, and after [Hurricane Katrina]."[7]  Assuming these allegations to be true, and viewing them in the light most favorable to Plaintiff, there is simply no basis for the Court to conclude that  testifying pursuant to a subpoena in the criminal trial of a co-

---

[6] The Court does not mean to imply that a public employee's speech before a judicial tribunal is *per se* protected.  *Garcetti* advised lower courts that the "proper inquiry" into the citizen/government speech dichotomy is a "practical one."  547 U.S. at 425.

[7] Even without the job description provided by Plaintiff in his complaint, this is not a case in which the Court has an "imperfect understanding of the precise duties associated with a public sector job," such that further factual development of the record is necessary.  *See Chrzanowski*, 725 F.3d at 740.  The Court is comfortable assuming Plaintiff's job duties do not, within the meaning of *Garcetti*, encompass testifying under subpoena in the criminal trial of a co-worker.  *See id.* (finding plaintiff's job title as an "assistant's state's attorney" sufficiently familiar as to permit a ruling under *Garcetti* without further factual development of the plaintiff's official duties).

worker is one of the "daily professional activities" that Plaintiff was paid to perform.  *Cf. Garcetti*, 547 U.S. at 422.  That Plaintiff's testimony related to the subject matter of his employment is not dispositive.  *See id.* at 421; *Charles*, 522 F.3d at 513 ("To hold that any employee's speech is not protected merely because it concerns facts that he happened to learn while at work would severely undercut First Amendment rights.").

Furthermore, as in *Reilly* and *Chrzanowski*, Plaintiff's obligation as a citizen to provide truthful testimony in a judicial proceeding is independent of his duties as a public servant.  One could argue, however, that the Fifth Circuit's opinion in *Gibson* undercuts the persuasive value of this line of reasoning.  As explained *supra*, the plaintiff in *Gibson*—who served as the chief of police—alleged retaliatory discharge after reporting the mayor to outside law enforcement agencies for misuse of the city gasoline card.  734 F.3d at 397.  On appeal, the court held that the plaintiff's reports did not constitute citizen speech under *Garcetti*.  *Id.* at 406.  The court rejected the argument "that reporting illegal activity is the duty of all citizens, and therefore must constitute protected citizen speech."  *Id.* at 405.  The court opined that a "[a] test that allows a First Amendment Retaliation claim to proceed whenever the government employee can identify a civilian analogue for his speech" is impracticable, because "[a]ll official speech, viewed at a sufficient level of abstraction, has a civilian analogue."  *Id.* (second alteration in original) (quoting *Bowie v. Maddox*, 653 F.3d 45, 48 (D.C. Cir. 2011)).  Applying this logic to the case at bar, one could argue that the existence of a civilian analogue for Plaintiff's speech—providing testimony at

14

trial—is irrelevant to the *Garcetti* analysis.  But this argument loses force when applied to the facts of this case.  One need not examine Plaintiff's speech at a "sufficient level of abstraction" in order to identify the civilian analogue.  As *Chrzanowski* and in particular *Reilly* make clear, testifying truthfully in a judicial proceeding has long been recognized as an inherently civilian obligation.[8] Finally, the Court notes that at least two district courts outside the Third Circuit have cited *Riley* with approval in similar circumstances.  *See, e.g.*, *Caruso v. City of N.Y.*, No. 06 Civ. 5997(RA), 2013 WL 5382206 (S.D. N.Y. Sept. 26, 2013) (finding that inspector general's testimony before a grand jury convened to investigate the misconduct of a co-employee over whom plaintiff had supervisory authority constituted citizen speech); *Walker v. Town of Hennessey*, 951 F. Supp. 2d 1263 (W.D. Okla. 2013) (finding that policeman's proposed testimony on behalf of accused in criminal trial involving shooting of mayor's son constituted citizen speech).  Given the foregoing, the Court finds Plaintiff spoke as a citizen within the meaning of *Garcetti*.

### c. *Whether Plaintiff's Speech Involved a Matter of Public Concern*

Whether speech involves a matter of public concern is a question of law.  *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005).  A court answers this question by examining the content, form, and context of the speech.  *Jordan v. Ector Cnty.*, 516 F.3d 290, 295 (5th Cir. 2008).  Although this inquiry is necessarily fact-specific, certain bright-line rules have emerged.  For

---

[8] As Justice Souter noted in dissent, "the [plaintiff's] claim relating to truthful testimony in court must surely be analyzed independently [from his other claims] to protect the integrity of the judicial process."  *Garcetti*, 547 U.S. at 444 (Souter, J., dissenting).

example, "speech relating to official misconduct . . . almost always involves matters of public concern." *Charles*, 522 F.3d at 514 (collecting cases).  This rule shines "especially"  bright "when [the speech] concerns the operation of a police department."  *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 192 (5th Cir. 1988).  Moreover, "[w]hen an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern." *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1578 (5th Cir. 1989); *see also Reeves v. Claiborne Cnty. Bd. of Educ.*, 828 F.2d 1096, 1100–01 (5th Cir. 1987) (finding plaintiff's testimony in civil trial constituted matter of public concern).  Given the foregoing, there can be no doubt that testimony in a trial involving the criminal wrongdoing of fellow police officers is of high First Amendment value.

> d.  *Whether Plaintiff's Interest in Speaking Outweighed the City's Interest in Promoting Workplace Efficiency*

Even if a public employee speaks as a citizen on a matter of public concern, his speech is not *per se* protected by the First Amendment.  *See Jordan*, 516 F.3d at 295.  "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti*, 547 U.S. at 418.  Government employers require "a significant degree of control over their employees' words and actions" in order to ensure the efficient provision of public services.  *Id.* Unlike private employees, public employees occupy "trusted positions in society."  *Id.*  Thus, a public employee's speech may contravene governmental policies or impair the provision of

16

government services in ways that a private citizen's speech cannot.  *Id.*  In sum, "[t]he government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer."  *Waters v. Churchill*, 511 U.S. 661, 675 (1994) (plurality opinion).

On the other hand, "a citizen who works for the government is nonetheless a citizen." *Garcetti*, 547 U.S. at 410.  The government may not use the employment relationship as subterfuge for restricting the freedom their employees enjoy *qua* citizens.  *Id.*  "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."  *Id.*  In order to strike the proper balance, a court must weigh "the interests of the [employee], as a citizen, in commenting upon matters of public concern [against] the interest of the . . . employer [] in promoting the efficiency of the public services it performs through its employees."[9]  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).  Modified to the fit the contours of this case, the Court must balance Plaintiff's interest as a citizen in providing compelled testimony in the criminal prosecution of his co-workers against the City's interest in maintaining an effective police force.  As explained more fully below, this balance of interests weighs heavily in Plaintiff's favor.

Turning first to the Plaintiff's side of the scales, the Court finds that Plaintiff has a significant

---

[9] This weighing of interests is often referred to as "*Pickering* balancing."  *See, e.g.*, *James v. Tex. Collin Cnty.*, 535 F.3d 365, 379 (5th Cir. 2008).

First Amendment interest.  As the Seventh Circuit recognized in *Chrzanowski*, an individual has a strong interest in complying with the demand of a subpoena; failure to answer could result in lengthy incarceration.  725 F.3d at 742.  Moreover, once a citizen appears in court, his testimony is given under penalty of perjury: "it simply cannot be that an employee is faced with the 'Hobson's choice' of testifying truthfully under oath and getting fired without recourse or testifying falsely and committing perjury." *Caruso*, 2013 WL 5382206, at *17; *accord Johnston*, 869 F.2d at 1578 ("Employees either could testify truthfully and lose their jobs or could lie to the tribunal and protect their job security.").

As the Fifth Circuit has noted, the weight of the First Amendment interest is not measured solely by the citizen's own personal interest in speaking.  *Kinney v. Weaver*, 367 F.3d 337, 361 (5th Cir. 2004) (en banc).  A court must also consider the value of the speech to the citizenry writ large. *Id.*  At a more general level, "[o]ur judicial system is designed to resolve disputes, to right wrongs. We encourage uninhibited testimony, under penalty of perjury, in an attempt to arrive at the truth." *Reeves*, 828 F.3d at 1100.  Allowing government employers to retaliate for testimony damaging to the government would compromise the integrity of the judicial process—a process that affects all citizens in all walks of life.  *See Johnston*, 869 F.2d at 1578; *accord Chrzanowski*, 725 F.3d at 742 ("[T]hreats or punishment for subpoenaed testimony undoubtedly chill valuable 'contributions to the civic discourse' in significant and pernicious ways."); *Caruso*, 2013 WL 5382206, at *17 ("By offering a government employee the option of jail or unemployment, the

18

court would be chilling speech in a forum where candor is critical to informed decision-making.") (internal quotation marks omitted).  As to the speech involved in this case, the Fifth Circuit "has emphasized the great First Amendment significance of speech bearing on official misconduct, especially when it concerns the operation of a police department."  *Kinney*, 367 F.3d at 361.

Given the significant First Amendment value of Plaintiff's speech, the City faces an uphill battle to tip the scales back in its favor.  *See Jordan*, 516 F.3d at 299.  While the City surely has a strong interest in providing effective law enforcement, *see Kinney*, 367 F.3d at 362, it is difficult to ascertain how that interest would be furthered by punishing police officers for providing truthful testimony under compulsion of subpoena. *See Chrzanowski*, 725 F.3d at 742 ("[I]f the [government employer] . . . had some legitimate managerial interest in dissuading [the government employee] from testifying truthfully pursuant to a subpoena, we cannot imagine what it might be.").  In fact, one could argue Plaintiff's speech actually *furthered* the City's interest in providing effective law enforcement by helping to purge the NOPD of suspected criminals within its ranks.

e. *Whether Plaintiff's Speech Precipitated an Adverse Employment Decision*

Finally, Plaintiff must prove that his testimony at the Glover hearing was a "substantial or motivating factor" for his termination.  *Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 675 (1996).  Whether Plaintiff can carry this burden is a question of fact, *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir. 1992), and is thus ill-suited for resolution on the pleadings. *See Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 366 n.9 (5th Cir. 2000)

19

(finding issue of causation in First Amendment retaliation case "not relevant" in Rule 12(b)(6) analysis). Moreover, the Court notes that temporal proximity between the protected speech and the adverse employment decision—which Plaintiff alleges in his complaint—may establish the requisite causal connection. *Miles v. Beckworth*, 455 F. App'x 500, 504 (5th Cir. 2011).

   ii. *Fifth Amendment and Fourteenth Amendment Claims*

  Plaintiff re-urges the same Fifth Amendment and Fourteenth Amendment claims which the Court previously dismissed but adds no new factual allegations. Accordingly, those claims are dismissed with prejudice. *See generally Winn v. New Orleans City*, 919 F. Supp. 2d 743 (E.D. La. 2013).

  B. *Municipal Liability*

  Having determined Appellant states a valid claim for First Amendment retaliation, the Court next addresses whether the City can be held liable. In *Monell v. Dep't of Social Services*, the Supreme Court held that municipalities and other local governments are suable entities under Section 1983. 436 U.S. at 690. But municipal liability cannot be predicated on the doctrine of *respondeat superior*. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010). Rather, the constitutional tort must be attributable to the municipality through some sort of official imprimatur. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Municipal liability under Section 1983 requires proof of three elements: "(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *Davis v.*

20

*Tarrant Cnty., Tex.*, 565 F.3d 214, 227 (5th Cir. 2009).

A civil rights plaintiff may carry his burden of proof under the second prong in three ways. *See Brown v. Bryan Cnty., OK*, 219 F.3d 450, 457 (5th Cir. 2000). First, he can demonstrate the existence of "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc). An official policy can also be evidenced by custom, that is,"[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* Finally, "[w]hen the person who committed the challenged act is in charge of policymaking in that part of the government, 'policy' can sometimes be found to have been established by the very act itself." *Hampton Co. Nat'l Surety, LLC v. Tunica Cnty., Miss.*, 543 F.3d 221, 227 (5th Cir. 2008). Plaintiff seeks to impose liability on the City through this "single act" exception, arguing that Serpas is a policymaker who unlawfully terminated his employment.

In order for the act of a single defendant to constitute an official policy of the municipality, he or she must be imbued with "final policymaking authority." *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 784–85 (1997). Whether a government employee possesses the requisite authority is a question of law. *Id.* at 786. Courts should look to "state and local positive law, as well as custom or usage having the force of law." *Gros v. City of Grand Prairie, Tex.*, 181 F.3d 613, 616 (5th Cir.

1999) (internal quotation marks omitted).  A public employee who successfully invokes the "single act" exception necessarily carries his burden of proof with respect to the other two elements of municipal liability.[10]

Thus, for purposes of municipal liability, the issue before the Court is whether Serpas is a final policymaker.  The New Orleans Code of Ordinances establishes the Superintendent of Police (Serpas) as the head of the Department of Police.  New Orleans, La. Code of Ordinances, pt. 1, art. iv, ch. 5, § 4-501.  As such, Serpas is charged with, *inter alia*, "organiz[ing], administer[ing], supervis[ing], and disciplin[ing]" the City's police force.  *Id.* at § 4-501(1).  The Court finds this conferment of authority sufficient to establish Serpas as the final policymaker vis-à-vis the City police department.  At least two other sections of this Court have arrived at the same conclusion.  *See Beckett v. Serpas*, No. 12–910, 2013 WL 2921639, at *3 (E.D. La. June 12, 2013);  *Bean*, 2013 WL 5890573, at *4.  Accordingly, Plaintiff states a claim for municipal liability.

---

[10] A plaintiff satisfies the first element by demonstrating the putative policymaker has "final policymaking authority."  *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 248 (5th Cir. 2003).  Whether a government official possesses the requisite authority is question of state law.  *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  As explained *supra*, the "single act" exception also requires the Court to determine whether, under the relevant state law, an individual possesses final policymaking authority.  Furthermore, "when a municipal policy itself violates federal law, such a policy necessarily constitutes the 'moving force'" causation required to establish the third element of municipal liability.  *See Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997)).

**CONCLUSION**

For the reasons previously stated, the Motion to Dismiss is GRANTED IN PART.  The only claims remaining for trial are Plaintiff's First Amendment claim against the City and Louisiana state law claims against Serpas.


New Orleans, Louisiana, this 25th day of February, 2014.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**